TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorneys for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
 -------------------------------------------------------------- x

JUSTIN YING,
*on behalf of himself and others similarly situated,*

|                                                                                                          |                                                                          |
|----------------------------------------------------------------------------------------------------------|--------------------------------------------------------------------------|
|                                                             Plaintiff,                                    | Case No. 20-cv-06242 (ENV) (SJB)                                         |
| v.                                                                                                       | **29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION** |
| ALL-WAYS FORWARDING OF N.Y. INC.       f/k/a All Ways Forwarding of N.Y. Inc.       f/k/a All Ways Forwarding International of N.Y., Inc.       f/k/a All Ways Forwarding International Inc., ALL-WAYS FORWARDING INT'L INC., ALL-WAYS PACIFIC LLC, ALL-WAYS FORWARDING HOLDINGS LLC, SOLOMON WEBER, and DAVID PASKES, | **<u>AMENDED COMPLAINT</u>** **DEMAND FOR JURY TRIAL** |
|                                                             Defendants.                                   |                                                                          |

 -------------------------------------------------------------- x

Plaintiff JUSTIN YING (hereinafter "YING"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants ALL-WAYS FORWARDING OF N.Y. INC. f/k/a All Ways Forwarding of N.Y. Inc. f/k/a All Ways Forwarding International of N.Y., Inc. f/k/a All Ways Forwarding International Inc. (hereinafter "ALL-WAYS FORWARDING OF N.Y. INC."), ALL-WAYS FORWARDING INT'L INC., ALL-WAYS PACIFIC LLC, and ALL-WAYS FORWARDING HOLDINGS LLC, (hereinafter collectively the "entity Defendants"), and SOLOMON WEBER (hereinafter "WEBER"), and DAVID PASKES (hereinafter "PASKES") (hereinafter collectively the

"individual Defendants") (hereinafter collectively with the entity Defendants the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      YING brings this action on behalf of himself as well as other employees similarly situated against the Defendants for alleged violations of the Fair Labor Standards Act, (hereinafter "FLSA"), 29 U.S.C. § 201 *et seq.* and New York Labor Law (hereinafter "NYLL"), N.Y. Lab. L. §§ 190 *et seq.*, 650 *et seq.*, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including YING, overtime compensation for all hours worked over forty (40) each workweek, among other things.

3.      YING alleges pursuant to the FLSA that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgement interest; and/or (4) attorney's fees and cost.

4.      YING further alleges pursuant to NYLL and Section 142 of Title 12 of the New York Codes, Rules, and Regulations (hereinafter the "Wage Order") that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a wage notice compliant with Section 195 of the NYLL at time of hire, (3) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide wage statements compliant with Section 195 of the NYLL with each payment of wages, (4) liquidated damages equal to the sum of unpaid overtime and unpaid spread of time, (5) nine percent simple prejudgment interest provided by NYLL and CPLR, (6) post-judgment interest, and (7) attorney's fees and costs.

5.      YING seeks to facilitate notice of this FLSA action to Defendants' employees in New York, New Jersey, and California, and to represent a class of employees in New York, New Jersey, and California, with the class members to bring claims under the FLSA, New York class members to bring claims under the NYLL, New Jersey class members to bring claims under the New Jersey Wage and Hour Law (hereinafter "NJWHL"), and California class members to bring claims under the California Labor Code (hereinafter "CLC").

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8.      YING was employed by Defendants from on or about March 15, 2018 through on or about October 21, 2020, to work in the Logistics Department at 182-30 150th Road, Suite 230, Springfield Gardens, NY 11413.

## DEFENDANTS

### *Corporate Defendants*

9.      ALL-WAYS FORWARDING OF N.Y. INC. is a domestic business corporation organized under the laws of the State of New York with a principal office at 182-30 150th Road, Suite 230, Springfield Gardens, NY 11413, and doing business at that address and at 161-15 Rockaway Boulevard, Third Floor, Jamaica, NY 11434. Both of these locations are just across Rockaway Boulevard from JFK Airport.

10.     ALL-WAYS FORWARDING OF N.Y. INC. has had a judgment against it and in favor of the New York Commissioner of Labor in 2002.

11.     According to Experian business data, ALL-WAYS FORWARDING OF N.Y. INC. had gross sales of $2,533,000.00 in fiscal year 2020, during the period relevant to this lawsuit.

12.     ALL-WAYS FORWARDING INT'L INC. is a foreign business corporation organized under the laws of the State of New Jersey with a principal office at 701 Newark Avenue, Suite 300, Elizabeth, NJ 07208, and doing business at that address, at 24760 Main Street, Carson, CA 90745, and in New York.

13.     ALL-WAYS FORWARDING INT'L INC. has had: two 2020 and one 2017 tax liens against it for unpaid state taxes in California; a 2020 judgment or lien against it in California in favor of the state Employment Development Department (the department administering the state's unemployment insurance, disability insurance, and paid family leave programs); a 2017 state tax warrant against it for unpaid state taxes in New York; a 2002 Industrial Commission Warrant (filed by the state Commissioner of Labor) against it in New York; and a 2002 judgment in favor of the Commissioner of Labor in New York.

14.     According to Experian business data, ALL-WAYS FORWARDING INT'L INC. had gross sales of $28,286,000.00 and 120 employees in fiscal year 2020, during the period relevant to this lawsuit.

15.     ALL-WAYS FORWARDING INT'L INC. has a federal tax ID number associated with the address 182-30 150th Road, Suite 221, Springfield Gardens, NY 11413.

16.     ALL-WAYS FORWARDING INT'L INC. has since 2013 maintained a New York workers' compensation insurance policy at the address 182-30 150th Road, Suite 101, Springfield Gardens, NY 11413, concurrently with ALL-WAYS FORWARDING OF N.Y. INC., which has

maintained a workers' compensation insurance policy at the same address since 2012.

17.     ALL-WAYS PACIFIC LLC is a foreign limited liability company organized under the laws of the State of California with a principal office at 15300 E Desman Road, La Miranda, CA 90638, and doing business at that address, at 24760 Main Street, Carson, CA 90745.

18.     According to Experian business data, ALL-WAYS PACIFIC LLC had gross sales of $416,000.00 and 3 employees just in its miscellaneous apparel and accessories stores division in fiscal year 2020, during the period relevant to this lawsuit. It also offers interior design services, business servies, and other clothing stores according to the North American Industry Classification system.

19.     ALL-WAYS PACIFIC LLC has had: 2018, 2016, and 2015 county tax liens for unpaid taxes in Los Angeles County, California.

20.     ALL-WAYS FORWARDING HOLDINGS LLC is a foreign limited liability company organized under the laws of the State of New Jersey with a principal office at 701 Newark Avenue, Suite 300, Elizabeth, NJ 07208, and doing business at that address.

21.     According to Commerical Credit Bureau records, "ALL-WAYS PACIFIC" had gross sales of $270,000.00 in 2020 from operating the location at 24760 Main Street, Carson, CA.

22.     According to Commerical Credit Bureau records, "ALL-WAYS FORWARDING" had gross sales of $884,000.00 in 2020 from operating the location at 24760 Main Street, Carson, CA

23.     According to Commerical Credit Bureau records, "ALL-WAYS FORWARDING" had gross sales of $7,392,000.00 in 2020 from operating the location at 182-30 150th Road, Springfield Gardens, NY.

24.     According to Commerical Credit Bureau records, "ALL-WAYS FORWARDING"

had gross sales of $6,088,000.00 in 2020 from operating the location at 701 Newark Avenue, Elizabeth, NJ.

25.    On their website, https://shipallways.com/contact/, Corporate Defendants list six locations in the United States: their headquarters at 701 Newark Avenue, Elizabeth, NJ 07208; the JFK location at 161-15 Rockaway Boulevard, Suite 300, Jamaica, NY 11434; the Carson, CA location at 24760 Main Street, Carson, CA 90745; the La Miranda, CA location at 15300 Desman Road, La Miranda, CA 90638; the Fontana, CA location at 15801 Santa Ana Avenue, Fontana, CA 92337; and the Dayton, NJ location at 10 Sigle Lane, Dayton, NJ 08810. Additionally, they list three locations in Israel, two in China, and one in Bangladesh.

26.    On their website, https://shipallways.com/service/forwarding/, Corporate Defendants describe their Forwarding Division as "deliver[ing] end-to-end cargo solutions" "[f]rom point of manufacture to point of sale" in "a powerful network of global alliances," using oceangoing shipping. From this it is apparent that Corporate Defendants, and in particular their forwarding division, are engaged in international and interstate commerce.

27.    In particular, upon information and belief, Corporate Defendants ship goods through and receive goods through the Port of Long Beach and JFK Airport.

### Individual Defendants

28.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendants, and being among the ten largest shareholders of a New York corporation, are individually responsible for unpaid wages under the Section 630(a) of the New York Business Corporation Law.

29.    WEBER is the Chief Executive Officer and a director of ALL-WAYS FORWARDING OF N.Y. INC., the President, Chief Executive Officer and registered agent in

California for ALL-WAYS FORWARDING INT'L INC., and an officer/member/manager/partner of ALL-WAYS PACIFIC LLC.

30.     WEBER lists his contact address as Chief Executive Officer for ALL-WAYS FORWARDING INT'L INC. as 405 Marcy Avenue, Brooklyn, NY 11206, which is a three-family dwelling which WEBER owns.

31.     As director, partner, President, CEO, and manager of ALL-WAYS FORWARDING OF N.Y. INC., ALL-WAYS FORWARDING INT'L INC., and ALL-WAYS PACIFIC LLC, WEBER had authority to hire and fire employees of these entities, and upon information and belief delegated the responsibilities to hire and fire employees, to determine employees' work schedules and conditions of employment, to determine employees' rates and methods of payment, and to keep employee records to subordinates, including but not limited to DAVID PASKES in New York.

32.     WEBER was, during the period relevant to this lawsuit, aware of the requirements of the wage-and-hour laws. ALL-WAYS FORWARDING INT'L INC. (and upon information and belief, WEBER as a "Doe") was sued in 2017 and 2018 for, among other things, failure to pay wages, failure to pay overtime, and failure to provide itemized wage statements in violation of the CLC.

33.     WEBER acted intentionally and maliciously and is an employer within the meaning of Section 203(d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, Section 2 of the NYLL § 2.6, Section 34:11-56a1(g) of the NJWHL, and the CA Labor Code and is jointly and severally liable with Corporate Defendants.

34.     PASKES is the Vice President of ALL-WAYS FORWARDING OF N.Y. INC. and in that role had authority to hire and fire employees of these entities, determine employees' work

schedules and conditions of employment, determine employees' rates and methods of payment, and keep employee records at 182-30 150th Road, Suite 230, Springfield Gardens, NY 11413, including for YING. Upon information and belief he delegated the responsibilities to hire and fire employees, to determine employees' work schedules and conditions of employment, to determine employees' rates and methods of payment, and to keep employee records to department managers, including but not limited to Levi Gelber.

35.    Levi Gelber, using authority he got from PASKES, hired YING.

36.    However, PASKES was the person who determined how much pay to give YING, gave YING his pay, and kept records of YING's pay including copies of his paystubs.

37.    PASKES acted intentionally and maliciously and is an employer within the meaning of Section 203(d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, Section 2 of the NYLL § 2.6, Section 34:11-56a1(g) of the NJWHL, and the CA Labor Code and is jointly and severally liable with Corporate Defendants.

## <u>STATEMENT OF FACTS</u>

### *Corporate Defendants Are a Single Integrated Enterprise*

38.    ALL-WAYS FORWARDING OF N.Y. INC., and ALL-WAYS FORWARDING INT'L INC., are upon information and belief all owned by ALL-WAYS FORWARDING HOLDINGS LLC.

39.    ALL-WAYS PACIFIC LLC is upon information and belief a subsidiary of ALL-WAYS FORWARDING INT'L INC.

40.    Corporate Defendants have common financial control and management in the person of WEBER.

41.    Corporate Defendants have centralized their labor relations between them.

42.    During his employment, YING was given an employee handbook used by the

whole All-Ways enterprise.

43.    Employees of Corporate Defendants, including YING in New York and among others Modesta Rivera and Rosa Juarez in California, suffer from similar unlawful wage payment policies including nonpayment of wages and nonpayment of overtime no matter where in the enterprise they work.

44.    Corporate Defendants' operations are highly interrelated.

45.    On their website, https://shipallways.com/about/, Corporate Defendants describe their business as a "unified, cohesive" "customs brokerage company," with a "headquarters" in Elizabeth, NJ (*see* https://shipallways.com/contact/), "multiple offices [in JFK Airport; in Shanghai; in Shenzhen; in Israel; in Bangladesh; and in La Miranda, California] all working symbiotically within a single organization," including a "forwarding division."

46.    ALL-WAYS PACIFIC LLC and ALL-WAYS FORWARDING INT'L INC. took out a loan as co-debtors from Corporation Service Company and Susquehanna Commercial Finance, Inc. in 2016.

47.    ALL-WAYS PACIFIC LLC and ALL-WAYS FORWARDING INT'L INC. took out a loan as co-debtors from Corporation Service Company and TCF Equipment Finance, a division of TCF National Bank, in 2016.

48.    ALL-WAYS PACIFIC LLC and ALL-WAYS FORWARDING INT'L INC. took out a loan as co-debtors from Corporation Service Company and Wells Fargo Equipment Finance Inc. in 2016.

49.    ALL-WAYS FORWARDING INT'L INC. took out a loan from Herald National Bank, at 623 Fifth Avenue, Eleventh Floor, New York, NY 10022 on March 28, 2009.

50.    ALL-WAYS FORWARDING OF N.Y. INC. also took out a loan from Herald

National Bank, at 623 Fifth Avenue, Eleventh Floor, New York, NY 10022 on March 28, 2009.

51.    ALL-WAYS FORWARDING OF N.Y. INC. and ALL-WAYS FORWARDING INT'L INC. took out a loan as co-debtors from Merrill Lynch Business Financial Services Inc. and Merrill Lynch Commercial Finance Corp. in 2002.

52.    At all relevant times, the work performed by Plaintiff was directly essential to the business operated by the enterprise.

## Wage and Hour Claims

53.    There are upon information and belief over 150 employees across All-Ways' locations, and over 40 in New York.

54.    Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against YING, the FLSA Collective Plaintiffs, and the Class.

55.    At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay YING his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

56.    While employed by Defendants, YING was not exempt under federal and state laws requiring employers to pay employees overtime.

57.    Defendants failed to keep full and accurate records of YING's hours and wages.

58.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

59.    At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from

employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

60.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff JUSTIN YING*

61.     From on or about March 15, 2018 through on or about October 21, 2020, YING was employed by Defendants to work as a Logistics Department Employee at All-Ways, which was at 182-30 150th Road, Suite 230, Springfield Gardens, NY 11413.

62.     Since YING's employment ended, All-Ways has moved to 161-15 Rockaway Boulevard, Third Floor Jamacia, NY 11434.

63.     When he was hired, YING was not furnished with a wage notice in English and Chinese containing: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with Section 191 of the NYLL;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different; and  the telephone number of the employer.

64.     From on or about March 15, 2018 through on or about June 30, 2018, from on or about November 1, 2018 through on or about June 30, 2019, and from on or about November 1, 2019 through on or about June 30, 2020, YING regularly worked 37.75 hours per week:

      a.     from 08:30 hours to 17:00 hours with one 45-minute break (7.75 hours and a spread of 8.5 hours per day), Mondays through Thursdays (4 days per week) (31 hours per week); and

b.   from 08:30 hours to 16:00 hours with one 45-minute break (6.75 hours and a spread of 7.5 hours per day) on Fridays (6.75 hours per week).

65.   From on or about July 1, 2018 through on or about October 31, 2018, from on or about July 1, 2019 through on or about October 31, 2019, and from on or about July 1, 2020 through on or about October 21, 2020, business was busier, so in addition to the hours set forth above, YING worked an additional 6 hours, for a total of 43.75 hours per week.

66.   The above-stated values are estimates based on YING's recollection; YING is in possession of paystubs that purport to record his hours each week over the course of his employment to the hundredths of hours.

67.   At all relevant times, YING would clock in and clock out, and his hours varied from his regular working schedule.

68.   However, at all relevant times, YING was not paid at time and a half rate for overtime work completed.

69.   Instead, YING was paid multiple rates, but not paid at time and a half for his overtime work completed.

70.   Specifically, YING was paid on a part-quasi-salary and part-hourly basis.

71.   From on or about March 15, 2018 through on or about June 20, 2018, YING's salary was $615.38 per week, which would sometimes vary depending on his time worked and sometimes would not. For instance, the week of March 22, 2018, YING was recorded as working 37.75 "reg pay" hours, and did not receive an hourly rate for those hours, but did receive $615.38 in salary. And the week of March 15, 2018, YING was recorded as working 17.08 "reg pay" hours, and did not receive an hourly rate for those hours, but did receive only $369.23 in salary. But the week of March 29, 2018, YING was recorded as working 35.60 "reg pay" hours, and did not

receive an hourly rate for those hours, but did receive $615.38 in salary.

72.    Additionally, from on or about March 15, 2018 through on or about June 20, 2018, YING received $15.38 per hour ($615.38 / 40) for so-called "misc" hours.

73.    From on or about June 21, 2018 through on or about October 10, 2018, YING's salary was $653.85 per week, and he received $16.35 per hour ($653.85 / 40) for so-called "misc" hours.

74.    From on or about October 11, 2018 through on or about January 16, 2019, YING's salary was $711.54 per week, and he received $17.79 ($711.54 / 40) for so-called "misc" hours.

75.    From on or about January 17, 2019 through on or about July 1, 2020, YING's salary was $769.23 per week, and he received $20.38 ($769.23 / 37.75) for so-called "misc" hours.

76.    From on or about July 2, 2020 through on or about October 21, 2020, YING's salary was $846.15 per week, and he received $22.41 ($846.15 / 37.75) for so-called "misc" hours.

77.    Throughout his employment, on weeks where his recorded "reg pay" hours and "misc" hours exceeded 40 hours, YING did not receive pay at time-and-a-half his regular rate for overtime hours. For instance, the week of April 12, 2018, YING was recorded as working 37.75 "reg pay" hours and 2.77 "misc" hours, totally 40.52 hours, but did not receive pay at 1.5 times his hourly rate for his 0.52 hours of overtime. Similarly, the week of May 3, 2018, YING was recorded as working 36.80 "reg pay" hours and 5.95 "misc" hours, totally 42.75 hours, but did not receive pay at 1.5 times his hourly rate for his 2.75 hours of overtime.

78.    The above are cited by way of example. The weeks YING worked overtime and did not receive overtime at time-and-a-half for any of the weeks he worked are myriad, occurred throughout his employment, and were recorded on YING's paystubs.

79.    Throughout his employment, YING was not compensated at least at one-and-one-

half his promised hourly wage for all hours worked above forty (40) in each workweek.

80.     Throughout his employment, YING was not exempt from receiving overtime.

81.     Throughout his employment YING was provided with wage statements with his payments of wages, but they were not compliant with Section 195.3 of the NYLL because they did not contain a statement of his regular hourly rate, overtime rate, number of regular hours worked, and number of overtime hours worked.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

82.     YING brings this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at their regular hourly rates for all hours worked and at one and one half times their regular hourly rates for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## <u>CLASS ACTION ALLEGATIONS</u>

83.     Plaintiff brings NYLL, NJWHL, and CA Labor Code claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

84.     All said persons, including Plaintiff, are referred to herein as the "Class."

85.     Plaintiff and All-Ways employees working in its NY locations constitute the "NY subclass."

86.     All-Ways employees working in its NJ locations constitute the "NJ subclass."

87.     All-Ways employees working in its CA locations constitute the "CA subclass."

88.     The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

89.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

90.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

### *For the NY subclass*

a.     Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

b.     Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

c.     Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

d.     Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

e. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

f. Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

g. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

**For the NJ Subclass**

h. Whether Defendant employed Plaintiff and the Class within the meaning of the NJWHL;

i. Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the NJWHL;

j. Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

k. Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

l. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

**For the CA Subclass**

m. Whether Defendant employed Plaintiff and the Class within the meaning of the California Labor Code;

n. Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the California Labor Code;

o.     At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

91.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

92.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

93.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions

engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

94.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

### **STATEMENT OF CLAIMS**

### **COUNT I.**
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime
Brought by the Plaintiff on Behalf of Himself and the FLSA Collective]**

95.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

97.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

98.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

99.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

100.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

101.    Defendants willfully and maliciously failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

102.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week

when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
**[Violation of New York Labor Law—Failure to Pay Overtime Brought by the Plaintiff on Behalf of Himself and the New York Subclass]**

103.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104.    An employer who fails to pay the overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

105.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

106.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

107.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT III.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought by the Plaintiff on Behalf of Himself and the New York Subclass]**

108.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

109.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

110.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

111.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

112.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IV.
**[Violation of New York Labor Law—Failure to Provide Wage Statements
Brought by the Plaintiff on Behalf of Himself and the New York Subclass]**

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

114.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

115.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

116.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law.

N.Y. Lab. Law §198(1-d).

## COUNT V.
### [Violation of New Jersey Wage and Hour Law—Failure to Pay Overtime
### Brought by the Plaintiff on Behalf of Himself and the New Jersey Subclass]

117.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

119.     At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

120.     By failing to pay Plaintiff and the class, the Plaintiff and Class Members are entitled to recover from Defendants his full unpaid overtime pay, damages for unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§ 34:11-56a *et seq.*

## COUNT VI.
### [Violation of CA Labor Code §§ 510, 1194, 1198—Failure to Pay Overtime
### Brought by the Plaintiff on Behalf of Himself and the California Subclass]

121.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

122.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

123.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

124.    By failing to pay Plaintiff and the class, the Plaintiff and Class Members are entitled to recover from Defendants his full unpaid overtime pay, damages for unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§ 34:11-56a *et seq.*

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, NJWHL, and CA Labor Code;

e)    An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid overtime wages due under FLSA and NYLL, NJWHL, and CA Labor Code due Plaintiff and the Collective/ Class Action members plus compensatory and liquidated damages;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)    An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b), NYLL §§198 and 663, NJWHL, and CA Labor Code;

l)    The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York
    April 9, 2021

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*
/s/ John Troy
John Troy (JT0481)
Aaron Schweitzer (AS 6369)