UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JUSTIN YING, *on behalf of all other persons*     :
*similarly situated*,     :
    :
                     Plaintiffs,     :        <u>MEMORANDUM AND</u>
    :        <u>ORDER</u>
    :
    -against-     :        20-CV-6242 (ENV)(MMH)
    :
ALL-WAYS FORWARDING OF N.Y. INC. f/k/a: 
All Ways Forwarding of N.Y. Inc., f/k/a All Ways: 
Forwarding International of N.Y., Inc., f/k/a All: 
Ways Forwarding International Inc., ALL-WAYS: 
FORWARDING INT'L INC., ALL-WAYS: 
PACIFIC LLC, ALL-WAYS FORWARDING: 
HOLDINGS LLC, SOLOMON WEBER, and: 
DAVID PASKES,     :
    :
                     Defendants.     :
-------------------------------------------------------------- x
**MARCIA M. HENRY**, United States Magistrate Judge:

Named Plaintiff Justin Ying; Corporate Defendants (1) All-Ways Forwarding of N.Y.

Inc., formerly known as All Ways Forwarding of N.Y. Inc., All Ways Forwarding International

of N.Y., Inc., and All Ways Forwarding International Inc. ("All-Ways NY"), (2) All-Ways

Forwarding Int'l Inc. ("All-Ways Forwarding"), (4) All-Ways Pacific LLC ("All-Ways

Pacific"), and (5) All-Ways Forwarding Holdings LLC ("All-Ways Holdings"); and Individual

Defendants Solomon Weber and David Paskes negotiated a settlement of this class and

collective action arising under, inter alia, the Fair Labor Standards Act (the "FLSA"), 29

U.S.C. §§ 201 *et seq*. and the New York Labor Law (the "NYLL"), Art. 6 §§ 1 *et seq*. (*See*

*generally* Am. Compl., ECF No. 22.)[1]   Before the Court are the parties' joint motions seeking: (1) final approval of the class action and collective settlement; (2) approval of the class representative's service awards; and (3) approval of attorneys' fees, administration fees, and costs. (ECF Nos. 53, 56, 59). The parties consented to the undersigned's jurisdiction to decide these motions. For the reasons set forth below, the motions are **granted in part and denied in part**.

## I.   **BACKGROUND**

### A.   **Relevant Factual and Procedural History**

All-Ways NY is a New York corporation with a principal office located at 182-30 150th Road, Suite 230, Springfield Gardens, New York 11413. (Am. Compl., ECF No. 22 ¶ 9.) All-Ways International and All-Ways Holding are New Jersey corporations both with their principal office in Elizabeth, New Jersey. (*Id*. ¶¶ 12, 20.) All-Ways Pacific is a California corporation with a principal office located in La Mirada, California 90638. (*Id*. ¶ 17.) The Corporate Defendants' Forwarding Division "delivers end-to-end cargo solutions from point of manufacture to point of sale . . . using 'oceangoing shipping,'" including shipping and receiving goods through the Port of Long Beach and JFK Airport. (*Id*. ¶¶ 26–27.) At all relevant times, Weber was the Chief Executive Officer and a director of All-Ways NY; the President, CEO, and registered agent in California for All-Ways International; and an officer/member/manager/partner of All-Ways Pacific. (*Id*. ¶¶ 29, 31.) Paskes was the Vice President of All-Ways NY. (*Id*. ¶ 34.) In these roles, Weber and Paskes had authority to hire and fire employees of the Corporate Defendants, determine employee's work schedules, rates

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

and methods of payment, and keep employee records.  (*Id.*)  Ying was employed by the Corporate Defendants from approximately March 15, 2018 through October 21, 2020, in the Logistics Department at All-Ways NY's principal office.  (*Id.* ¶ 61.)

On December 24, 2020, Ying commenced this collective and class action, on behalf of himself and all other "and former non-exempt employees who have been or were employed by Defendants," alleging that Defendants and individuals Paul Selvage, Ezra Danziger, and Paul Reisz (1) failed to pay overtime wages in violation of the FLSA, the NYLL, the New Jersey Wage and Hour Law ("NJWHL"), and the California Labor Code ("CLC"); and (2) failed to pay the spread of hours premium and to provide wage notices and wage statements in violation of the NYLL.  (*See generally* Compl., ECF No. 1.)  Plaintiff amended his Complaint on April 9, 2021, omitting all claims against Selvage, Danziger, and Reisz and the spread of hours claim.  (*See generally* Am. Compl., ECF No. 22.)  On June 2, 2021, the Court entered a discovery scheduling order over Defendants' objections.  (June 2, 2021 Order.)

In July 2021, Defendants moved to dismiss the Amended Complaint.  (ECF No. 31.) While Defendants' motion to dismiss was pending, the parties initially disputed the scope of class and collective action discovery.  (ECF Nos. 34–35; Dec. 10, 2021 Min. Entry.) On January 19, 2022, Plaintiff requested leave to seek conditional collective action certification, which Defendants opposed.  (ECF Nos. 36–37.)  Subsequently, the parties negotiated a stipulation defining the scope of the proposed collective action, agreeing to seek leave for notice to the putative collective, and scheduling a mediation.  (ECF No. 41.)  During a mediation session on May 20, 2022 before mediator Martin Scheinman of Scheinman Arbitration & Mediation Services, the parties reached a class-wide settlement as to Ying and 54 other non-exempt, non-managerial employees who were employed by All-Ways NY during

a nearly eight-year period.  (Mediation Status R., ECF No. 42 at 1; Troy Decl. for Final Approval, ECF No. 54 ¶ 50.)  Pursuant to the settlement terms, the parties also agreed that the claims against All-Ways International, All-Ways Holding, All-Ways Pacific, Weber, and Paske would be dismissed with prejudice.  (Mediation Status R., ECF No. 42 at 1.)

In July 2022, the parties jointly moved for an order (1) granting preliminary approval of the class settlement; (2) conditionally certifying a settlement class pursuant to Fed. R. Civ. P. 23(b)(3) and so-ordering the collective action pursuant to 29 U.S.C. § 216(b); (3) approving of the Notice of Proposed Settlement and Class Action Lawsuit and Fairness Hearing ("Class Notice"); (4) appointing John Troy, Aaron Schweitzer, and Tiffany Troy of Troy Law, PLLC ("Troy Law") as Class counsel; and (6) appointing Arden Claims Services, LLC as the claims administrator.  (ECF No. 46 at 4.)  The Court requested, and Plaintiff submitted, supplemental briefing regarding Plaintiff's attorneys' fees and damages calculation.  (*See* Jan. 23, 2023 Order; ECF No. 47.)  The Court granted the parties' joint motion in August 2023 and scheduled a fairness hearing for December 2023.  (Aug. 24, 2023 Order, ECF No. 51.)

In November 2023, the parties filed the instant motions for final approval of the class settlement, approval of service awards, and approval of the attorneys' fees.  (*See* ECF Nos. 53, 56, 59.)  The parties consented to magistrate judge jurisdiction to decide the motions.  (ECF Nos. 63, 66.)  The Court held a fairness hearing on December 7, 2023 and reserved decision. (Dec. 7, 2023 Min. Entry; *see generally* Dec. 7, 2023 Hr'g Tr., ECF No. 64 ("Tr.").) Thereafter, the Court granted Plaintiff leave to supplement the motions to address the parties' compliance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).  (ECF Nos. 69–70; Nov. 29, 2024 Order.)  To date, no Class members have filed objections to the Agreement.

### B.    Settlement Terms

The Settlement Agreement (the "Agreement") defines the Settlement Class (the "Class") as "Named Plaintiff and the current and former non-exempt employees who worked overtime and were employed by AW NY from December 24, 2014 to March 4, 2022 as identified on Exhibit A attached hereto."[2]    (Settlement Agt., ECF No. 45-1 ¶ 1.4.)    The Agreement also establishes a Settlement Fund of $775,000.00, "the maximum aggregate amount that can be paid by Defendants pursuant to this Agreement and includes any service awards and professional fees (which includes attorneys' fees and claims administrator fees), costs, and expenses." (*Id*. ¶ 1.27.)  Defendants will deposit the Settlement Fund into an account set up by the Administrator by 30 days after the Final Effective Date, defined as 35 days after the Court's final approval of the settlement and any applicable time to appeal.  (*See id*. ¶¶ 1.12, 3.1(C).)

Members of the Class will receive proportionate shares of the Settlement Fund based on the number of weeks they worked for All-Ways NY during the relevant period.  (*Id*. ¶ 3.1(A)(1).)  The Administrator will mail settlement checks to the Class Members within ten business days after Defendants fund the Settlement Account.  (*Id*. ¶ 3.1(C).)  If Class members do not cash their checks after 180 days of receipt, those amounts and all other amounts remaining in the Settlement Fund will be void and returned to Defendants.  (*Id*. ¶ 3.1 (F).)

In addition to the payments to Class members, the Agreement also contemplates the following awards to be paid out of the Settlement Fund, subject to Court approval: (1) attorneys' fees "not to exceed $258,333.33" and "litigation expenses and costs up to

---

[2] Exhibit A identified 55 Class members.  (*See* Settlement Agt. Ex. A., ECF No. 45-1 at 21–22.)

$3,000.00"; (2) administration fees "not to exceed $20,000"; and (3) a service award to Ying, the Named Plaintiff, of $30,000.00  (*Id*. ¶¶ 3.1(B), 3.2 & 3.3.)

Upon the issuance of the final approval order granting the motion for settlement, a Class member who does not opt-out of the Agreement fully releases and discharges Defendants of all wage and hour claims under the FLSA and NYLL and other actions that could have been brought.  (*See id*. ¶ 4.1.)

### C.    Notice to the Class

The Settlement Administrator mailed the Class Notice and Class Member Address Update Form ("Notice Packet") to 55 Class members contained in the Class list provided by Defendants via First Class Mail.  (Peek Revised Decl., ECF No. 62-1 ¶¶ 5–6.)  Five notice packets were originally returned by the post office, but two of them were re-mailed to the forwarding addresses and received, and two of them were re-mailed and received after the Settlement Administrator performed due diligence to locate the most recent addresses of the two Class members.  (*Id*. ¶ 7.)  The Settlement Administrator emailed the notice packets to three Class members (at their request) after their original notice packets were returned.  (*Id*.)  Accordingly, all the Class members received the notice packet.  (*Id*. ¶ 8.)  The Court-approved notice packet "advised Class members of their right to opt-out from or object to the Settlement and the implications of each such action" as well as informed the Class of "applicable deadlines and other events, including the date and location of the Fairness Hearing."  (*Id*. ¶ 4.)  To date, no Class Member has objected and only one Class Member opted out of the settlement.  (Peek Revised Decl., ECF No. 62-1 ¶¶ 8–10; Tr. 8:17–19.)

## II.  **LEGAL STANDARD**

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  To grant final approval of a class action settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." *Faroque v. Park W. Exec. Servs.*, No. 15-CV-6868 (DLI)(CLP), 2020 WL 9812905, at *3 (E.D.N.Y. Jan. 29, 2020) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); Fed. R. Civ. P. 23(e)(2).  "Whether a settlement is fair is a determination within the sound discretion of the court."  *Id.* (citing *Levitt v. Rodgers*, 257 F. App'x 450, 453 (2d Cir. 2007)).

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012)).  "Thus, a proposed settlement class must satisfy all the requirements for class certification under Rule 23, meaning that (1) all the prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—must be met; and (2) at least one of the three requirements of Rule 23(b) must be met."  *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV)(RML), 2018 WL 3642627, at *4 (E.D.N.Y. July 30, 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)).

Once the threshold Rule 23(a) and (b) requirements are satisfied, the Court considers whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account – among other substantive considerations stated in the rule – the proposed attorneys' fees and incentive

awards." *Moses v. New York Times Co*., 79 F.4th 235, 243 (2d Cir. 2023). The first two factors are procedural in nature: that is, adequate representation of the class and arm's length negotiations. *Id*. at 242 (citing Fed. R. Civ. P. 23(e)(2)(A)–(B)). The latter two guide the substantive review of a proposed settlement: adequacy of relief and equitable treatment. *Id*. at 242–43 (citing Fed. R. Civ. P. 23(e)(2)(C)–(D)); *see also Schutter v. Tarena Int'l, Inc*., No. 21-CV-3502 (PKC), 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 9, 2024).

## III.    DISCUSSION

### A.    Final Class Certification[3]

As set forth below, the Court finds that the requirements under Rule 23(a) and 23(b)(3) have been satisfied and therefore certifies the proposed class.

#### 1.    Rule 23(a) Requirements

##### a.    Numerosity

*First*, the parties have demonstrated that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed when the class is at least 40 members." *Flores v. CGI Inc.*, 2022 WL 13804077 at *3, No. 22-CV-350 (KHP) (S.D.N.Y. Oct. 21, 2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). While plaintiffs need not provide a precise quantity, they "'must show some evidence of or reasonably estimate the number of class members.'" *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 WL 4351357, at *4 (E.D.N.Y. Sept. 30, 2024), *adopted by* Order Adopting R. & R., *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417

---

[3] The joint motion papers do not address the relevant Rule 23(a) and Rule 23(b)(3) factors, but counsel responded to the Court's questions about the factors at the fairness hearing. (Tr. 14:2–20.)

(ENV)(MMH) (E.D.N.Y. Feb. 27, 2025) (quoting *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015)).  Here, the Class consists of 55 unique members, which Defendants identified following class certification and preliminary settlement approval.  (Peek Revised Decl., ECF No. 62-1 ¶¶ 5–6, 8.)  As such, numerosity is easily satisfied here.  *See Pagano v. HN & Sons LLC*, No. 22-CV-4897 (BMC), 2024 WL 4625296, at *2 (E.D.N.Y. Oct. 30, 2024) ("[P]laintiffs have identified 54 employees affected by defendants' compensation practices in just the final three years of the class period, which certainly justifies a 'reasonbl[e] estimate' that the class size over the entire six-year period will exceed 40 persons.").

### b.    Commonality

*Second*, Plaintiff meets the commonality requirement of Rule 23(a)(2) because there are questions of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2).  "'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. . . . Their claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *McLaughlin*, 2018 WL 3642627, at *7 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50). Ying and the Class Members allege several common factual and legal issues, including whether, inter alia, Defendants maintained a policy, pattern, and/or practice of (i) refusing to pay overtime compensation; (ii) failing to pay spread-of-hours pay; (iii) failing to provide requisite statutory meal periods, and (iv) failing to provide wage statements and wage notices. (Am. Compl., ECF No. 22 ¶¶ 2, 59, 90, 99.)  These alleged wage and hour violations involve common operative facts stemming from Defendants' policies that affected the Class members in the same way.  *See, e.g., Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 98 (E.D.N.Y.

2015) (plaintiffs established commonality and typicality when all class members' claims all arise from the same violations of the FLSA and NYLL relating to failure to pay back pay, minimum, and overtime wages).  Accordingly, Rule 23(a)(2)'s commonality requirement has been met.

### c.    Typicality

Similarly, Plaintiff demonstrates typicality, which requires that "the claims or defenses of the representative parties are typical of [those] of the class."  Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Pickard v. OnSite Facility Servs*., LLC, No. 5:22-CV-207 (AMN/ML), 2023 WL 7019256, at *4 (N.D.N.Y. Oct. 25, 2023) ("Typicality requires that a class representative have 'the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'").  "'[M]inor variations in the fact patterns underlying [the] individual claims' do not preclude a finding of typicality."  *Flores*, 2022 WL 13804077, at *3 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)).  Ying and the Class members all allege the same violations of the FLSA and NYLL arising out of their employment at All-Ways NY.  (Am. Compl., ECF No. 22 ¶¶ 53–54.)  Further, the fact that Ying and other workers are in different departments does not preclude a finding of typicality, because Defendants' workers across the Logistics, Brokering, and Accounting departments claimed that Defendants failed to pay them overtime when they worked over 40 hours in a workweek.  (*See* Tr. 14:6–20.)  Therefore, Plaintiff's claims are typical of those of the Class.

### d.    Adequacy

Finally, Plaintiff must show that named Plaintiff will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In order to meet the final requirement, adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation." *Emeterio v. A&P Rest. Corp*., No. 20-CV-970 (KHP), 2022 WL 274007, at *4 (S.D.N.Y. Jan. 26, 2022) (citing *Marisol A.*, 126 F.3d at 378). There are no conflicting interests here: the named Plaintiff and other Class members are similarly situated workers employed at All-Ways NY who were subject to the same allegedly unlawful wage payment practices and seek similar damages. *D'Angelo v. Hunter Bus. Sch., Inc*., No. 21-CV-3334 (JMW), 2023 WL 4838156, at *3 (E.D.N.Y. July 28, 2023). Moreover, Plaintiff's counsel has substantial experience in state and federal wage and hour litigation generally and class and collective actions. (*See generally* Troy Decl. for Final Approval, ECF No. 54 ¶¶ 6–33.) Because Plaintiff will fairly and adequately protect the interests of the Class, the adequacy requirement has been met.

### 2.    Rule 23(b)(3) Requirements

As relevant here, Plaintiff also satisfies the Rule 23(b)(3) requirement that "the questions of law or fact common to class members predominate over individual questions and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("Rule 23(b)(3) added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded."). "Together, the predominance and superiority requirements were designed

to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347 (ER), 2024 WL 1157074, at *6 (S.D.N.Y. Mar. 18, 2024) (cleaned up). Plaintiff satisfies both 23(b)(3) requirements.

"The 'predominance' requirement asks if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Hernandez*, 306 F.R.D. at 98 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). "Here, common issues predominate as all members of the [s]ettlement Class suffered the same alleged harms resulting from the same alleged [failure to pay overtime wages and failure to issue wage notice and statements], which are subject to generalized proof and applicable to the entire class. The [s]ettlement Class is thus sufficiently cohesive to meet the predominance requirement." *Amigon v. Safeway Constr. Enterprises, LLC*, No. 20-CV-5222 (PK), 2024 WL 5040436, at *9 (E.D.N.Y. Dec. 9, 2024).

Rule 23(b)(3) also requires that a class action must be a "superior method" to individual litigation. The rule considers factors such as: (A) the class members' interests in individually controlling separate actions, (B) the extent and nature of any litigation already begun, (C) the desirability of concentrating litigation in a particular forum, and (D) the difficulties in managing a class action. *Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 50–51 (E.D.N.Y. 2024) (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)). "The Court must conclude that 'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results.'" *Id.* (quoting *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)).  Given the Class Members' presumably limited financial resources and the relatively small value of each Class member's claim, they have a strong interest in proceeding as a class action than in individual lawsuits.  (*See* Tr. 13:17–25 (noting average class members' payments as approximately $8,630.30 each); *see also* Peek Revised Decl., ECF No. 62-1 ¶ 13 (calculating highest gross payment of $24,408.56).)  Without this mechanism, the Class members may not be afforded the same meaningful recovery.  With respect to the second factor, Plaintiff has not indicated that there is another pending litigation related to the same claims brought under this action.  Further, because all alleged unlawful conduct occurred at All-Ways NY located in Jamaica, New York, concentrating the litigation in the Eastern District of New York is highly desirable.  Finally, neither Plaintiffs nor Class counsel, who has substantial experience in managing FLSA class actions in this district, has expressed any particular difficulty in managing this action.  Based on these considerations, the Court finds that the certification of this Class will conserve judicial time and resources and promote uniformity in decisions by avoiding piecemeal litigation of 55 separate cases.  *See Brown*, 609 F.3d at 483.  Therefore, proceeding as a class action is the superior method.

## B.    Class Settlement Approval

Finally, Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  After careful review, the Court concludes that final approval of the class action settlement is appropriate.[4]

---

[4] The Court is authorized to award final approval of the settlement because all relevant federal and state officials have been served with notice of the settlement, pursuant to CAFA.  *See* 28 U.S.C.

### 1.    Procedural Fairness

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter*, 2024 WL 4118465, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B)).

*First*, as to Rule 23(e)(2)(A), the Court assesses "whether: 1) Lead Plaintiffs' interests are antagonistic to the interests of the other members of the class and whether 2) Lead Counsel are qualified, experienced and able to conduct the litigation such that Lead Plaintiffs have manifested their interest in vigorously pursuing class claims." *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059 (KAM)(SJB), 2024 WL 1719632, at *4 (E.D.N.Y. Apr. 22, 2024) (cleaned up). The Court has already found adequacy of the Class representative and Class counsel in the Rule 23(a)(4) analysis. (*See* § III.A.1.d., *supra*.) "Given the similarity of the analyses regarding adequacy under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class

---

§ 1715(d); *Perez v. Jupada Enters., Inc.*, No. 10-CV-3118 (JMF), 2012 WL 3042928, at *2 (S.D.N.Y. July 25, 2012). And while Defendants mailed the CAFA Notices to the relevant officials more than 10 days after the parties filed their joint motion for the Court's preliminary approval of the parties' proposed settlement (*see* Troy Decl. for CAFA Notice, ECF No. 70 ¶¶ 6–8 5; *id.* Exs. 2–4, ECF Nos. 70-2 to 70-4; ECF No. 44), courts in this Circuit have deemed the CAFA requirements satisfied with comparable or longer periods of delay. *See, e.g.*, *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 12399285, at *2 (S.D.N.Y. Oct. 21, 2022) (notices mailed over one month after motion); *Sanchez v. Kambousi Rest. Partners, LLC*, No. 15-CV-5880 (CM)(HBP), 2016 WL 11717105, at *2 (S.D.N.Y. Aug. 5, 2016) (notices mailed 12 days after motion); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2020 WL 8212936, *2 (S.D.N.Y. Dec. 22, 2020) (notices mailed less than two months after motion); *Story v. SEFCU*, No. 18-CV-764 (MAD)(DJS), 2021 WL 736962, at *2 (N.D.N.Y. Feb. 25, 2021) (notices mailed nearly three months after motion).

representative[] and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A)." *Schutter*, 2024 WL 4118465, at *7.

*Second*, applying Rule 23(e)(2)(B), "[b]eing familiar with the strengths and weaknesses of each side's case and the risks posed by continued litigation, this Court is of the view that the settlement was the product of arms-length negotiations." *Faroque*, 2020 WL 9812905, at *4. The parties reached settlement after substantial exchange of documents and extensive negotiations over nearly one year. Class counsel conducted a thorough investigation, including interviews with Ying and legal research on the class claims' merits, the likelihood of successful class certification, and the proper measure of damages. (Troy Decl. for Final Approval, ECF No. 54 ¶¶ 37–39.) Defendants produced over 2,100 pages of payroll documents for the 55 Class Members that formed the basis for the proposed damages calculation. (*Id*. ¶ 42.) The parties also participated in a full-day private mediation session and exchanged detailed mediation statements, ultimately reaching a class-wide settlement. (*Id*. ¶¶ 49–52.) The record amply reflects all counsel's exhaustive efforts to represent the interests of their clients through substantial discovery and arms-length negotiations. *Flores*, 2022 WL 13804077, at *6.

Accordingly, the Court finds that the process of reaching the class settlement in this case was procedurally fair.

### 2.    Substantive Fairness

To evaluate the substantive fairness of a settlement, the Second Circuit historically enumerated nine factors (known as the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

*Flores*, 2022 WL 13804077, at *6 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  More recently, the Second Circuit clarified that courts must "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members."  *Moses*, 79 F.4th at 244 (citing Fed. R. Civ. P. 23(e)(2)(C)–(D)).  "In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement."  *Schutter*, 2024 WL 4118465, at *8.

### a.    Adequacy of Class Relief

To assess whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

### i.    Costs, Risks, and Delay of Trial and Appeal

The first Rule 23(e)(2)(C) factor, "the costs, risks, and delay of trial and appeal," largely overlaps with several *Grinnell* factors, including the complexity, expense, and likely duration of the litigation, the risk of establishing lability and damages, and the risks of maintaining the class action through the trial. (*i.e.*, *Grinnell* factors 1, 4, 5, and 6, respectively).  *See Vasquez*, 746 F. Supp. 3d 26 at 55 (quoting *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021)); *Schutter*, 2024 WL 4118465, at *8.

Class counsel recognizes the significant risk "because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and in light of Defendants' available defenses." (Mem. for Final Approval, ECF No. 55 at 12.) Counsel also understands that maintaining a class through trial would not be simple because there is a significant risk that the Court may decertify the Class upon experienced defense counsel's motion practice. (Mem. for Final Approval, ECF No. 55 at 13; Tr. 12:4–9.) Such "[c]ontested collective and class certification motions would likely require extensive discovery and briefing." *Viafara v. MCIZ Corp.*, No. 12-CV-7452 (RLE), 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014). Class counsel further recognizes the risk of "additional expense and delay via a complicated trial" and, given the history of the parties' disputes in the litigation, Defendants' likely appeal if Plaintiffs recover at trial. (Mem. for Final Approval, ECF No. 55 at 9–10.) Similarly, as noted in the motion and stated at the fairness hearing, Defendants vigorously contest the allegations but "are interested in putting [this case] behind them. Uncertainty of litigation, cost of litigation, time-consuming nature of litigation, they want to move forward[.]" (Tr. 10:21–25; Mem. for Final Approval, ECF No. 55 at 9 n.1.) In sum, the parties' understanding of the complexity, risks, and expenses of continued litigation and their desire to avoid those risks and costs support final approval of the settlement.

### ii.    Effectiveness of Relief Distribution

The second Rule 23(e)(2)(C) factor, "the effectiveness of any proposed method of distributing relief to the class" supports a finding that the class-wide relief is adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii). "In considering the effectiveness of the proposed method of distributing the settlement to class members, the Court must consider whether the proposed method will deter or defeat unjustified claims without imposing an undue demand on class

members.'" *In re Tenaris*, 2024 WL 1719632, at *9 (quoting *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *7 (E.D.N.Y. May 25, 2021)). The distribution method and claims-processing formula "need only have a reasonable rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

The Agreement in this case sets forth an effective method of processing each Class member's claim and distributing the settlement payments. (*See* Settlement Agt., ECF No. 45-1 ¶ 3.1.) Specifically, the Settlement Fund will be allocated according to each Class member's "proportionate shares" using the number of weeks the Class member worked for All-Ways NY during the relevant time period. (*Id.* ¶ 3.1(A)(1).) Each Class member will receive a "point" for every full or partial week worked. (*Id.*) Then, "[t]he Settlement Fund, after deductions for court approved attorneys' fees and expenses, settlement administration fees and expenses, service awards, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members who do not timely opt-out of the settlement ("Point Value"); and (b) each Class Member's total points will be multiplied by the Point Value to determine his or her 'Individual Settlement Amount.'" (*Id.* ¶ 3.1(A)(2).) Finally, an experienced Claims administrator will mail the checks to Class members within ten business days after Defendants remit the Settlement Fund into the Settlement Account. (*Id.* ¶ 3.1(C); Peek Revised Decl., ECF No. 62-1 ¶ 12.) Upon review of these provisions in the Agreement and the Class administrator's declaration regarding the allocation of the Settlement Fund, the Court is satisfied that the proposed method is effective and reasonable.

### iii.    Proposed Attorneys' Fees

The third Rule 23(e)(2)(C) factor directs the Court to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P.

23(e)(2)(C)(iii).   Pursuant to the Agreement, Class counsel seeks attorneys' fees of $258,333.33 to be paid from the Settlement Fund, or approximately one-third of the $775,000 Settlement Fund.  (Settlement Agt., ECF No. 45-1 ¶ 3.2.; Mot. for Fees, ECF No. 59 at 1; Troy Decl. for Fees, ECF No. 61 ¶ 82.)  This is "within the range of fee award percentages that courts in this Circuit have approved." *Flores*, 2022 WL 13804077, at *10 (collecting cases). Moreover, as discussed herein, the lodestar multiplier is within the range of what is considered reasonable for FLSA class actions in this Circuit; therefore, the attorneys' fees amount is reasonable.  (*See* § III.E, infra.)  As to the timing of payment, the Agreement does not contemplate a specific date by which the disbursement of attorneys' fees will occur—and whether Class counsel will receive their fee before the Settlement checks are distributed to the Class members.  (*See* Settlement Agt., ECF No. 45-1 ¶ 3.2.)  However, courts have held that payment to attorneys before disbursements to claimants "does not undercut that case where, as here, the majority of other factors weigh significantly" in favor of final settlement approval. *Schutter*, 2024 WL 4118465, at *9 (quoting *Mikhlin*, 2021 WL 1259559, at *7).  Therefore, even if Class counsel were to be paid before Class members, that timing will not weigh significantly against final approval of the Settlement.

### iv.    Rule 23(e)(3) Agreement

The fourth and final Rule 23(e)(2)(C) factor requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  There is no evidence in the record before the Court that such agreement exists between the parties.  Therefore, this factor is neutral and does not impede the final approval of the Settlement.

### b.    Equitable Treatment of Class Members

In evaluating whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245.  Particularly, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Schutter*, 2024 WL 4118465, at *10.  Courts must ensure that the settlement protects "the interests of class representative who play an active role in the litigation" while also "reject[ing] incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id*. (citing *Moses*, 79 F.4th at 245.)

As noted, the Settlement Fund will be distributed to each Class member according to their "proportionate shares," which are calculated by the number of weeks each Class member worked.  (*See* Settlement Agt., ECF No. 45-1 ¶ 3.1(A).)  Courts have found that such "[p]ro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D)." *Schutter*, 2024 WL 4118465, at *10 (citing *Cymbalista*, 2021 WL 7906584, at *9).  In addition, the Agreement provides for a $30,000 service award for Ying, the sole Class representative.  (Settlement Agt., ECF No. 45-1 ¶ 3.1(B); *see generally* Mot. for Service Awards, ECF No. 56.)  As discussed herein (*see* § III.D., *infra*), this service award is appropriate to compensate the Class representative for his time and efforts to assist the prosecution of this case and the related risks and burdens, and is reasonable for FLSA class actions. *Zhu*, 2024 WL 4351357, at *9.  Further, the scope of the release in the Agreement

(*see generally* Settlement Agt., ECF No. 45-1 § 4.1) "applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 47 (E.D.N.Y. 2019). For these reasons, the Court finds that the Class members are treated equitably pursuant to the Agreement.

### c.    Remaining *Grinnell* Factors

### i.    Class Reaction to the Settlement

As to the second *Grinnell* factor, the Class's reaction to the Settlement, the Settlement Administrator confirmed that no Class member has objected to the settlement after receiving notice of this class action, and only one Class member opted out of the settlement. (Peek Revised Decl., ECF No. 62-1 ¶¶ 8–10; Tr. 8:17–19.) This indicates a "overwhelmingly positive response" that "reinforces the Court's conclusion that the Settlement is fair, adequate and reasonable." *Faroque*, 2020 WL 9812905, at *6 (citing *Fujiwara v. Sushi Yasuda Ltd*., 58 F. Supp. 3d 424, 432–33 (S.D.N.Y. 2014) ("[T]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.")). Thus, the second *Grinnell* factor also weighs in favor of approval.

### ii.    Stage of Litigation and Completed Discovery

For the third *Grinnell* factor, relating to the stage of litigation and discovery before settlement, the parties have engaged in discovery relating to All-Ways NY since the initial conference in August 2021 until the parties reached a class-wide settlement in May 2022. (*See* Aug. 17, 2021 Min. Entry; Dec. 10, 2021 Min. Entry; ECF Nos. 38, 42.) This record reflects that "discovery has advanced far enough for the parties to realistically evaluate the value of

the case" (Tr. 8:20–22) and that the parties clearly "had an adequate appreciation of the merits of the case before negotiating" a resolution. *Fujiwara*, 58 F. Supp. 3d at 433 (finding that counsel was "sufficiently aware of the merits of the case" because they had already conducted depositions and document discovery of payroll records, work schedules, and employee files); *see also Vasquez*, 2024 WL 3966246, at *17. Accordingly, the Court finds that the third *Grinnell* factor also weighs in favor of settlement approval.

### iii.    Defendants' Ability to Withstand Greater Judgment

As to the seventh *Grinnell* factor, "[i]f a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate.'" *D'Angelo*, 2023 WL 4838156, at *7 (citing *Flores*, 2022 WL 13804077, at *9). While Plaintiff believes the record is unclear, defense counsel advised the Court at the fairness hearing that he was not aware that Defendants could not to withstand a judgment greater than the $775,000 settlement. (Mem. for Final Approval, ECF No. 55 at 13; Tr. 11:1–5.) However, this factor by itself does not mean the settlement is not fair. Rather, the seventh *Grinnell* factor "is neutral and does not preclude the Court from approving the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

### iv.    Range of Reasonableness of Settlement

Finally, as to the eighth and ninth *Grinnell* factors of evaluating the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks, the Court finds that these factors also warrant a final approval of the settlement. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Viafara*, 2014 WL 1777438, at *7 (cleaned up). Instead, "there is a range of reasonableness with respect to a settlement—a range

which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Hernandez*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The proposed settlement of $775,000 is reasonable when viewed in light of the best possible recovery and in light of all the attendant risks. While class counsel estimated that the Class's best available damages award is approximately $1.94 million exclusive of liquidated damages, statutory penalties, and attorneys' fees (Mem. for Final Approval, ECF No. 55 at 14), at the fairness hearing defense counsel disputed that number, suggesting that it might be substantially lower. (Tr. 7:23–10:18.) Nonetheless, according to Class counsel, the proposed settlement of $775,000 "represents a significant recovery compared to the damages calculations performed by Plaintiff's counsel to assess the maximum possible recovery," and may represent 97% of unpaid wages. (Mem. for Final Approval, ECF No. 55 at 14; Troy Decl. for Final Approval, ECF No. 54 ¶ 58, 62.) In light of these calculations and reasoning, the Court finds that the range of recovery is reasonable. Moreover, a settlement ensures that immediate payment of substantial amounts is made to Class members, even if the recovery post-trial may be hypothetically larger. *Hall v. ProSource Technologies*, 14-CV-2502 (SIL) 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016). Thus, the eighth and ninth *Grinnell* factors weigh in favor of final approval.

Accordingly, the class settlement is both procedurally and substantively fair under Rule 23(e), and therefore the class action settlement is approved.

### C.    FLSA Collective Action Settlement Approval

Plaintiff does not expressly seek approval of the collective action settlement. Nonetheless, judicial approval of FLSA settlements is required by courts in the Second Circuit.

*See Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015).  As such, when a case involves both a class action and collective action, courts in this Circuit analyze the *Grinnell* factors with respect to approval of the class action, then look to *Cheeks* for the FLSA collective action analysis.  *See D'Angelo*, 2023 WL 4838156, at *9 (citing *Mills v. Capital One, N.A*., No. 14-CV-1937 (HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015)).  In other words, "in addition to the factors that govern approval of any class action settlement, a court evaluating the settlement of an FLSA action must take into account other considerations, including any confidentiality requirements, the scope of any release, and any provision for attorneys' fees." *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-CV-9705 (JCF), 2017 WL 2198158, at *7 (S.D.N.Y. May 17, 2017) (citing *Cheeks*, 796 F.3d at 206.)  That said, because "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval for the FLSA settlement.  *Flores*, 2022 WL 13804077, at *9 (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)).

The Agreement largely "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Quispe v. Stone & Tile Inc*., 583 F. Supp. 3d 372, 375 (E.D.N.Y. 2022) (cleaned up); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).  The Agreement contains a reversion clause that is permissible given the circumstances of this case.  (*See* Settlement Agt., ECF No. 45-1 § 3.1(F) ("Any uncashed settlement checks, and all other amounts remaining in the fund after one hundred eighty (180) days shall be void and returned to Defendants.").)  A reversion clause is subject to some scrutiny because it provides that any unclaimed settlement funds will revert back to the defendants, as opposed to, for example, being distributed among the Class members

24

who claimed their settlement amounts. *See, e.g.*, *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 225 (W.D.N.Y. 2017). However, reversion clauses are not necessarily prohibited in settlement agreements, although they may warrant a decrease of the award of attorneys' fees in some circumstances where there may be risk of "low participation rates for 'claims made settlements' (i.e., settlements that require the filing of a claim form in order to share in the settlement proceeds)." *See, e.g., McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 388 (S.D.N.Y. 2017); *see also Espinal v. Victor's Cafe 52nd St., Inc.*, No. 16-CV-8057 (VEC), 2019 WL 5425475, at *4 (S.D.N.Y. Oct. 23, 2019) ("Although parties are entitled to structure a settlement in this way, the settlement structure must be considered when determining an appropriate percentage for attorneys' fees, particularly where . . . there was good reason to suspect that the claims rate would be quite low and that there would be a substantial reversion."). There is little concern of a low claims rate by Class members; according to the Claim Administrator, all Class members have already been notified by mail or email, and Class members did not need to file a claim to be eligible for payment. (Peek Revised Decl., ECF No. 62-1 ¶¶ 8, 12.) Therefore, because there is no reason to suspect that there would be substantial reversion for the benefit of Defendants, the Agreement's reversion clause does not preclude a finding of a fair and reasonable settlement.

Further, the Agreement's release provision is narrowly tailored to "any and all claims for any wage-and-hour violations . . . that may have occurred arising from or relating to each Class Member's employment or engagement with Defendants[,]" (Settlement Agt., ECF No. 45-1 § 4.1(A)), and thus not impermissibly broad. *See Garay v. Euro Metalsmith*, No. 23-CV-3451 (ARR)(JMW), 2023 WL 8435866, at *5 (E.D.N.Y. Dec. 5, 2023) ("Although the

agreement contains a release, it is not an unfettered general release requiring that Plaintiffs waive any and all claims that they may have against Defendants," and is thus reasonable).

On the other hand, the Agreement contains a highly restrictive confidentiality provision that is inconsistent with the spirit of the FLSA. (*See* Settlement Agt., ECF No. 45-1 § 4.1(G).) Section 4.1(G) provides, in relevant part, "Named Plaintiff and Class Counsel agree that they will not in any manner publicize this Agreement to any member of the media and will not post or disseminate the terms and condition [*sic*] of this Agreement to any member of the media or via any social media site . . . " Such confidentiality provision that "bars plaintiffs from openly discussing their experiences litigating this wage-and-hour case" is prohibited in FLSA settlement agreements because such restrictions "run afoul of the purposes of the FLSA and the 'public' independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015); *see Perez v. 66 Meat Corp*., No. 22-CV-7003, 2024 WL 2716851, at *4 (E.D.N.Y. May 28, 2024) (collecting cases that reject confidentiality provisions that prohibit plaintiffs from disclosing the terms of the settlement), *adopted by* 2024 WL 3161838 (E.D.N.Y. June 25, 2024). Moreover, the purported "carve-out" that "[n]othing herein, however, shall restrict Class Counsel from discussing the terms and conditions of this Agreement with any Class Member, or from assisting the Claims Administrator from notifying Class Members of the Agreement" does not cure the impermissibly drafted confidentiality provision because the provision still prevents Plaintiffs from openly discussing their experiences with others. *Zhu*, 2024 WL 4351357, at *12 (quoting *Gonzales v. Lovin Oven Catering of Suffolk, Inc*., No. 14-CV-2824 (SIL), 2015 WL 6550560,

at *3 (E.D.N.Y. Oct. 28, 2015); *see also Perez*, 2024 WL 2716851, at *5 (rejecting confidentiality stipulation allowing disclosure to only legal counsel, spouse, and accountant)).[5]

Therefore, the Court strikes Section 4.1(G) from the Agreement. The remaining provisions of the Agreement are valid in accordance with the Agreement's "Blue Penciling" clause. (*See* Settlement Agt., ECF No. 45-1 § 5.7 ("If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.") Upon striking of the impermissible confidentiality clause, the Court approves the FLSA collective action settlement.

### D.    Service Award

The Agreement provides for a service award for the Class representative Ying in the amount of $30,000. (Settlement Agt., ECF No. 45-1 ¶ 3.1(B); *see generally* Mot. for Service Awards, ECF No. 56.)

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall*, 2016 WL 1555128, at *9 (quoting *Viafara*, 2014 WL 1777438, at *16).

---

[5] The confidentiality provision also includes a related non-disparagement clause in which Ying "agrees not to make disparaging comments related to Defendants except as may be required by law or protected by law." (Settlement Agt., ECF No. 45-1 ¶ 4.1(G).) The Court also finds this impermissible because: (1) it is not mutual and (2) the purposed carveout is too vague to apprise Ying of what comments may or may not be "required by law or protected by law," rendering the carve-out ineffective. *See Lopez*, 96 F. Supp. 3d at 180 n.65 ("But insofar as [the non-disparagement provision] would bar plaintiffs from making 'any negative statement' about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.").

Recognition payments are "particularly appropriate in the employment context" because "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Flores*, 2022 WL 13804077, at *10 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

The Class representative's requested service award of $30,000—or approximately 3% of the Settlement Fund— is reasonable and within the range of awards granted in this district. *See, e.g.*, *Massiah*, 2012 WL 5874655, at *5 (collecting cases showing approval of service awards ranging from $5,000 to $30,000). The service award compensates the named Plaintiff for his services rendered throughout litigation, including, inter alia, his regular communication with Class counsel via telephone, zoom, and in-person meetings; their assistance with the preparation of the Complaint; responses to discovery requests; drafting of motions and affidavits; and participation in settlement negotiations and mediation. (Troy Decl. for Service Awards, ECF No. 58 ¶¶ 3–4.) As stated at the fairness hearing, Ying provided information about himself and other similarly situated All-Ways NY employees and corroborate his statements with documents that led to the settlement. (*See* Tr. 15:1–16:3.) "This award incentivizes other claimants to serve as class representatives in related cases, and he should not receive the same award as the other Class Members in light of his efforts." *D'Angelo*, 2023 WL 4838156, at *10.

Having reviewed the supporting declaration from Class counsel regarding the time and effort devoted by the Class representative in assisting in the prosecution of the case, the Court finds the requested service award to be reasonable. Accordingly, the Court awards Ying, the Named Plaintiff, a $30,000 service award.

E.      **Attorneys' Fees**

Class counsel requests attorneys' fees in the amount of $258,333.33, or "approximately one-third of the Settlement Fund[.]"  (Mot. for Fees, ECF No. 59 at 1; Troy Decl. for Fees, ECF No. 61 ¶ 8; Settlement Agt., ECF No. 45-1 ¶ 3.2.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "'Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method[.]"  *Bondi v. DeFalco*, No. 17-CV-5681 (KMK), 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020) (quoting *McDaniel v. Cty. of Schnectady*, 595 F.3d 411, 417 (2d Cir. 2010)).  A court applying either method should consider the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

1.      **Percentage of Recovery**

Courts in this Circuit typically approve fee awards representing one-third of the total recovery in collective actions.  *See Flores*, 2022 WL 13804077, at *10 (collecting cases); *see also Beckman,* 293 F.R.D. at 477 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008)).  Class counsel's request of $258,333.33 out of a settlement fund of $775,000 represents 33.33% of total recovery and is therefore reasonable.  *Schutter*, 2024 WL 4118465, at *13.

2.      **Goldberger Factors**

The *Goldberger* factors further favor approval of attorneys' fees.

*First*, as discussed previously, Class counsel spent "significant effort" to achieve the settlement in May 2022, by thoroughly investigating the claims and defenses, having extensive motion practice, reviewing and analyzing comprehensive wage and hour records, and submitting a detailed mediation statement.  (*See* Troy Decl. for Fees, ECF No. 61 ¶ 20–21, 27, 30.)  According to Class counsel's submission, Class counsel and counsel's paralegal have spent "more than 250 attorney and paralegal hours prosecuting this case over the course of slightly more than three years."  (Troy Decl. for Fees, ECF No. 61 ¶ 37; *see* Billing Records, ECF No. 61.)  Moreover, these hours do not include the additional hours that Class counsel will expend to administer the settlement in the future.  Accordingly, the first factor supports the reasonableness of the requested fees.

*Second*, the magnitude and complexity of FLSA cases also favor approval.  "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Beckman*, 293 F.R.D. at 479 (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)).  Among FLSA cases, "the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b)."  *Viafara*, 2014 WL 1777438, at *11.  Therefore, the second factor also favors approval of attorneys' fees.

*Third*, Class counsel has certainly taken on the risk of recovery in this wage and hour action, where claims are highly fact-dependent and Defendants raised several affirmative

defenses, requested dismissal of all claims, and denied material allegations. Therefore, the litigation risks in this case weigh in favor of approving attorneys' fees.

*Fourth*, as to the quality of representation, Class counsel's firm, Troy Law, has extensive experience litigating large-scale wage and hour class and collective actions in this district. (Troy Decl. for Fees, ECF No. 61 ¶¶ 40–54.) Class counsel's substantial experience in wage and hour class and collective actions further supports approval of attorneys' fees.

*Fifth*, the factor of public policy also favors approval of attorneys' fees because "FLSA and NYLL are remedial statutes designed to protect the wages of workers," and the approval of fees in this case will further that statutory purpose. *Viafara*, 2014 WL 1777438, at *13; *see also D'Angelo*, 2023 WL 4838156, at *12 (holding that "such an award will encourage experienced litigators . . . to take on [wage and hour] cases in the face of risk"). Moreover, "class actions are an invaluable safeguard for public rights." *Beckman*, 293 F.R.D. at 481 (citing *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 809 (1985)). Accordingly, the public policy benefits weigh in favor of awarding attorneys' fees.

Accordingly, considering all of the *Goldberger* factors, the Court finds that award of $258,333.33 in attorneys' fees is reasonable.

### 3. Lodestar Cross Check

Finally, although the general trend in this Circuit is toward the percentage-of-recovery method, the lodestar remains useful as a "baseline" or a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. The lodestar amount is the "product of a reasonable hourly rate and the reasonable number of hours required by the case." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *16 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel*, No. 20-CV-2914

(ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. (cleaned up). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp*., No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case. *Id*. Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. *Beckman*, 293 F.R.D. at 481 (collecting cases showing courts awarding lodestar multipliers between two and eight).

Class counsel's lodestar amount is $100,893.50.[6] (Troy Decl. for Fees, ECF No. 61 ¶ 83; *see also* Billing Records, ECF No. 61-1 at 1–9.)

The Court finds that Class counsel's lodestar is too high because of counsel's unreasonably high hourly rates. However, as explained below, a reduction in hourly rates will still put the lodestar multiplier in an acceptable range for wage and hours class actions in this

---

[6] The motion states that "Class Counsel spent over 1,055 hours litigating and settling this matter over eight years" and that the lodestar amount is "about $452,392.50." (Mem. for Attorneys' Fees, ECF No. 60 at 22.) This is obviously incorrect. The motion also states a different lodestar of $98,170.50. (*Id*. at 6.) The Court instead adopts the lodestar amount of $100,893.50 averred in Mr. Troy's Declaration and confirmed at the fairness hearing. (*See* Troy Decl. for Fees, ECF No. 61 ¶ 83; Tr. 21:13–20.)

district.  Therefore, Class counsel's attorneys' fee of $258,333.33 is also reasonable using the lodestar cross check method.

### a.    Hourly Rate

Class counsel seeks hourly rates of $650 for John Troy, $400 for Aaron Schweitzer, $250 for Tiffany Troy, and $200 for Preethi Kilaru.  (Troy Decl. for Fees, ECF No. 61 ¶¶ 56, 64, 75, 76, 81; Billing Records, ECF No. 61-1 at 1–9.)  These rates are all considerably higher than the accepted rates for FLSA cases in this district and thus warrant reductions.  In fact, for same reasons, courts in this district have "consistently discounted Troy Law's requested hourly rates for the same attorneys and support staff."  *Sanchez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA)(LGD), 2024 WL 2855719, at *5 (E.D.N.Y. June 6, 2024) (collecting cases) ("As evidenced by this ample caselaw, Troy Law is no stranger to the rates typically awarded to them, and thus, the Court finds that their requests for rates rejected as recently as last year troubling.").

With regards to Mr. Troy's hourly rate, the Court finds $650 to be unreasonable despite the substantial experience he has in litigating wage-and-hour actions because the rate is well above the $300 to $450 range for partners that is accepted in this district.  *Morales*, 2023 WL 7684775, at *7.  Likewise, Mr. Schweitzer, who is a "managing associate" at Troy Law and a 2016 law graduate, requested a $400 hourly rate, which may be within the acceptable rates for partners, but not for senior associates.  *Id.*  Ms. Troy, a 2021 law school graduate, was a junior associate at the time of this litigation, yet requested a high hourly rate of $250—a rate more appropriate for senior associates.  *Id.*  Ms. Kilaru, a "managing clerk," billed at a rate of $200, even though it is unclear whether she is admitted to practice law and whether she was performing any legal work on the case.

As raised during the final approval hearing, Class counsel asserts that these rates are acceptable in part because "[t]he Second Circuit has long since determined that in fee applications, 'rates used by the court should be current rather than historic hourly rates." (Tr. 22:19–23:2; *see Zhu v. Wanrong Trading Corp.*, 18-CV-417 (ENV)(MMH), Pls.' Supp. Ltr., ECF No. 139 at 4 (citing *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006), *Lochren v. Cty. of Suffolk*, 344 F. App.'x. 706, 709 (2d Cir. 2009), and *Shi v. TL & CG Inc.*, No. 19-CV-08502 (SN), 2023 WL 5827598, at *5 (S.D.N.Y. Sept. 8, 2023).)[7]  However, these cited cases do not necessarily justify the high rates that Class counsel is requesting.  In fact, the holdings in these cases appear to undermine Class counsel's argument entirely.  Class counsel's requested rates are not "market rates," or what is "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter*, 457 F.3d at 232; *see Shi*, 2023 WL 5827598, at *5 (recommending reduction in counsel's fees, recognizing that "[m]uch has been written in this district about the inflated rates charged by John Troy and others at his firm").  Therefore, even if the Court were to award the "current rather than historic hourly rates," the requested rates would not be defensible based on the cases that Class counsel cites.

Given the inflated hourly rates of counsel, the Court will reduce each attorney and staff member's hourly rate across-the-board to the highest end of the acceptable range, for purposes of determining a more reasonable lodestar amount.  In other words, Mr. Troy's hourly rate will

---

[7] The Court accepts Plaintiffs' supplemental letter filed by the same Class counsel in *Zhu*, an unrelated action, because it addresses the same attorneys' fees issues counsel raised in this case and discussed at the fairness hearing.  (Tr. 22:19–23:2.)

be reduced to $450; Mr. Schweitzer's to $325 and $200; Ms. Troy's to $200 and $100; and Ms. Kilaru to $100.  *See Morales*, 2023 WL 7684775, at *7.

### b.    Reasonable Hours Expended

Nonetheless, the Court finds that the number of hours expended in this case is reasonable.  According to Class counsel's submission, Class counsel and their paralegals "have spent more than 250 hours prosecuting this case over the course of slightly more than three (3) years."  (Troy Decl. for Fees, ECF No. 61 ¶ 37.)  The breakdown for each attorney is provided: 45.79 hours for John Troy, 104.53 hours for Aaron Schweitzer, 113.83 hours for Tiffany Troy, and 7.54 hours for Preethi Kilaru.  (Troy Decl., ECF No. 61 ¶ 83.)

A careful review of the Class counsel's contemporaneous billing records shows that the hours expended are reasonable overall, although some entries are questionable.[8]  Overall, however, the records reflect the various reasonable tasks that Class counsel had to complete to litigate this case and prepare for class-wide settlement, such as calculating Class damages in advance of the mediation, conferring with opposing counsel on settlement, drafting the Agreement, communicating with clients, reviewing the final notice to Class members, and drafting applications to the Court.  Therefore, the Court finds that Class counsel's number of hours expended used to calculate the lodestar amount is reasonable.

Multiplying the reduced hourly rates and the hours expended, the Court finds that the adjusted lodestar should be $85,523.50, as opposed to Class counsel's calculation of $100,893.50.  The adjusted lodestar multiplier is, therefore, 3.02 (*i.e.*, $258,333.33 /

---

[8] For example, Mr. Schweitzer billed 0.33 hours on August 18, 2022 to "[t]ry to create link for Video" and billed 0.67 hours on December 22, 2021 to "[b]egin working on MCCC," which are either vague or the types of tasks better suited and more economical for a paralegal or support staff to handle.  (Billing Records, ECF No. 61-1 at 4.)

$85,523.50), which is still well within the acceptable range. *Beckman*, 293 F.R.D. at 481 (collecting cases showing courts awarding lodestar multipliers between two and eight). Accordingly, the Court awards Class counsel attorneys' fee of $258,333.33.

### F.    Costs

Class counsel requests costs and expenses in the amount of $1,998.50 to be paid from the Settlement Fund.  (Mot. for Fees, ECF No. 60 at 23; Troy Decl. for Fees, ECF No. 61 ¶ 82.) Courts typically allow counsel to recover their reasonable out-of-pocket expenses.  *See D'Angelo*, 2023 WL 4838156, at *12 (finding costs such as filing fees, service fees, mediation, investigation, and mailing and printing to be reasonable and appropriate); *see also Flores*, 2022 WL 13804077, at *10 (awarding litigation costs including filing fee, service fees, notice printing and mailing fees, and fees related to mediation).

Class counsel has submitted an invoice summary with some receipts showing out-of-pocket expenses such as filing fee, process server fees, postage fees, printing fees, and mediation cost.  (Billing Records with Receipts, ECF No. 47-1 at 7–8.)  While the expenses are reasonably incurred and necessary to represent the Class, *see In re Tenaris*, 2024 WL 1719632, at *12, this Court does not find that the attached receipts support the requested costs and expenses.  Specifically, class counsel only provides the receipts to support the costs in the total amount of $1,352.70, including the filing fee of $402.00, the mediation cost of $950, and business records service fee of $0.70.  (*Id*. at 9–11.)

Accordingly, the Court awards Class counsel $1,352.70 in costs.

### G.    Administrator Fees

The Settlement Administrator in this litigation, Arden Claims Services, requests a $9,000 fee to be paid from the Settlement Fund.  (Mot. for Fees, ECF No. 60 at 23.)  The

Agreement contemplates the administration fee award "not to exceed" $20,000, thus the requested amount is in accordance with the parties' agreement.  (*See* Settlement Agt., ECF No. 45-1 ¶ 3.3.)

The Administrator was appointed to administer the settlement in accordance with the terms of the Agreement including, inter alia, (a) mailing the Notice Packet; (b) processing undeliverable Notice Packets; (c) researching the most recent addresses for the Class members whose Notice Packet were returned as undeliverable and resending the Notice Packet by mail or email; and (d) receiving any requests for exclusion.  (*See* Peek Revised Decl., ECF No. 62-1 ¶¶ 6–7, 9.)  If the Court grants final approval of the settlement, the Administrator will continue to fulfil duties to facilitate the settlement, such as calculating the individual Class member's allocated amount, distributing the funds by mailing checks, and tax-reporting.  (*Id.* ¶ 3.)

The Court finds that the requested administration fee of $9,000 is reasonable in light of the tasks completed by the Administrator in facilitating the notice to Class members and the tasks to be completed in the distribution of funds to each Class member.  *See Flores*, 2022 WL 13804077, at *11 (approving an administration fee of $25,000 to be reasonable and within the range charged by settlement administrators in similar cases); *see also D'Angelo*, 2023 WL 4838156, at *13 (approving the same amount in administrator's fees "because [the administrator" disseminated all notices, performed awards calculations per Class Member, and maintained correspondences with the Class Members").  Accordingly, the Court approves the requested $9,000 administration fee.

IV.    **CONCLUSION**

For the foregoing reasons, the parties' motions at ECF Nos. 53, 56, and 59 are **granted in part and denied in part**.  Specifically: (1) The Court certifies the Settlement Class and approves the parties' Settlement Agreement, with the exception of the confidentiality and non-disparagement provision of the Agreement, which is stricken. (2) The Court approves the following awards: (a) to Ying, the Named Plaintiff, **$30,000.00** as a service award; (3) to Class counsel, **$258,333.33** for attorneys' fees and **$1,352.70** for litigation costs; and (4) to the Settlement Administrator, a fee of **$9,000.00**.

**SO ORDERED.**

Brooklyn, New York
March 31, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge